IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-3113-WJM-STV

ANDREA FELTMAN,

    Plaintiff,

v.

WILFRED EUROPE, Adams County Deputy Sheriff,
CORY ENGEL, Adams County Deputy Sheriff,
MICHAEL MCINTOSH,[1] Former Adams County Sheriff in his individual capacity,
RICK REIGENBORN, Adams County Sheriff in his official capacity,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND FOR
LACK OF SUBJECT-MATTER JURISDICTION**

---

This matter is before the Court on Defendants Wilfred Europe ("Europe"), Cory Engel ("Engel"), and Michael McIntosh's ("McIntosh's") Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (ECF No. 17). For the reasons that follow, the Motion is granted in part and denied in part.

## I. BACKGROUND

Proceeding individually and on behalf of her deceased son Kyler Grabbingbear, Plaintiff Andrea Feltman filed a Complaint in this Court against Defendants on December 3, 2018. (ECF No. 1.) Defendants on March 4, 2019 filed their Motion to

---

[1] Defendants assert that Defendant McIntosh is no longer the Sheriff of Adams County, having been succeeded by Rick Reigenborn. (ECF No. 17 at 1.) Pursuant to Fed. R. Civ. P. 25(d), Reigenborn will be substituted as a party for claims against Defendant McIntosh in his official capacity.

Dismiss for Lack of Jurisdiction and for Failure to State a Claim (the "Motion") (ECF No. 17.)

On March 7, 2019 Defendants filed a Motion to Stay Discovery (ECF No. 18), seeking to stay discovery pending the resolution of the qualified immunity issues raised in Defendants' Motion to Dismiss.  The Magistrate Judge on April 17, 2019 granted Defendants' Motion to Stay Discovery, with two exceptions not relevant here.  On May 24, 2019, Plaintiff filed a Response to Defendants' Motion to Dismiss (ECF No. 34), and on June 7, 2019, Defendants filed a Reply (ECF No. 35).

Plaintiff's allegations in her complaint, which the Court accepts as true for purposes of this Motion, are as follows: At approximately 3:30 AM on December 7, 2017, Grabbingbear was leaving Apartment 301 on the third floor of a building located in unincorporated Adams County, Colorado.  (ECF No. 1 at 4.)  Simultaneously, Europe "was serving a notice" to a woman in nearby Apartment 303.  *Id*.  Europe heard noise emanating from Apartment 301, and Grabbingbear emerged holding a table.  *Id.* at 5.  Europe ordered him to stop.  *Id.* at 5.  Grabbingbear dropped the table and began to flee from Europe down a flight of stairs.  *Id.* at 5.

Europe pursued Grabbingbear down the stairs, and a struggle ensued on the ground floor outside the apartment building.  *Id.* at 5.  During the struggle, Europe "battered Grabbingbear causing severe injury to his right forehead, left cheek, lower lip, interior neck, lower back, right upper arm, right elbow, right forearm, left upper arm, and left wrist."  *Id.* at 5.  At 3:37 AM, "[a]fter rendering Grabbingbear incapable of further resistance, Deputy Europe unholstered and then fired his .45 caliber, Para Hi-Cap 1911

handgun, at close range[,]" and the bullet entered Grabbingbear's left upper chest.  *Id.* at 5.

Soon after Grabbingbear was shot, Engel arrived on the scene.  *Id.* at 5.  Neither Europe nor Engel provided medical assistance to Grabbingbear, and paramedics were not called until 3:48 AM.  *Id.* at 6.  Grabbingbear eventually was taken by ambulance to Denver Health Medical Center, where he was pronounced dead at 4:24 AM.  *Id.* at 6.

Plaintiff, arguing that Grabbingbear's killing was unlawful, brings numerous state and federal claims against Defendants.  *Id.* at 7–11.  With respect to Plaintiff's federal claims, Defendants in the Motion argue that they are entitled to qualified immunity, and that dismissal consequently is appropriate under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 17 5–13.)  With respect to Plaintiff's state law claims, Defendants seek dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1).  *Id.* at 13–15.

## II.  LEGAL STANDARD

### A.     Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted."  The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy

which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

B.  **Rule 12(b)(1) Motion to Dismiss**

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *See id.*

## III. ANALYSIS

### A. Claim 1 – § 1983: Excessive Force Against Defendant Europe[2]

Plaintiff, arguing that Grabbingbear's Fourth Amendment right against unreasonable seizures was violated, seeks money damages from Defendant Europe under 42 U.S.C. § 1983. (ECF No. 1 at 7.) Defendants argue that Europe is entitled to qualified immunity, and as such, that Claim 1 should be dismissed. (ECF No. 17 at 9–13.)

#### 1. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To resolve a claim of qualified immunity, the Court must consider two elements: (1) whether Plaintiff has alleged a constitutional violation, and (2) whether the violated right was "clearly established" at the time of the violation. *Id.* at 230–31. "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry. *Id.* at 232. When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted

---

[2] By separate order, Plaintiff will be ordered to show cause why the Estate of Kyler Grabbingbear should not be substituted as the proper § 1983 plaintiff, under *Berry v. City of Muskogee*, 900 F.2d 1489 (10th Cir. 1990).

immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

      a.     *Prong 1 – Constitutional Violation*

The question at this stage is whether Plaintiff has plausibly alleged that Defendant Europe's shooting of Grabbingbear was objectively unreasonable. The Court concludes that she has.

"Apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individuals Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Garner*, 471 U.S. at 11.

Plaintiff alleges that Defendant Europe shot Grabbingbear "[a]fter rendering [him] incapable of further resistance." (ECF No. 1 at 5.) While it is unclear precisely what this means, it does strongly suggest that Grabbingbear could not have posed an immediate threat to Europe or to others at the time he was shot. Indeed, for purposes of Defendants' Motion, the Court must view Plaintiff's allegations in the light most favorable to her. The Supreme Court has squarely held that using deadly force against a person who is not an immediate threat to the safety of officers or to the public is unreasonable. *Garner*, 471 U.S. at 11. As such, Plaintiff has adequately alleged that

6

Europe violated Grabbingbear's Fourth Amendment right against unreasonable seizures.

        b.     *Prong 2 – Clearly Established Law*

To overcome the presumption in favor of qualified immunity, Plaintiff must show not only that Defendant Europe committed a constitutional violation, but also that he did so in violation of clearly established law. *Pearson*, 555 U.S. at 230–31.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (internal quotation marks omitted). Further, the precedent upon which the plaintiff relies must have existed at the time of the alleged violation for it to make clear to an official at that time that his actions would violate the law. *See Wilson v. Layne*, 526 U.S. 603, 614 (1999).

Here, the *Garner* case is on point. In *Garner*, the Supreme Court held that using deadly force against a person who did not pose an immediate threat to the officer or to the public was unreasonable. Defendant Europe is alleged to have shot Grabbingbear after the latter had been beaten to the point where he was incapable of further resistance. Given these factual contentions, the Court finds that Plaintiff has adequately alleged that Defendant Europe, by shooting Grabbingbear under these specific circumstances, violated clearly established law. Defendants' Motion is therefore denied with respect to Claim 1.

**B. Claims 2 & 3 – § 1983; Failure to Provide Medical Assistance Against Defendants Europe and Engel**

Plaintiff seeks to hold Defendants Europe and Engel liable under § 1983 for failure to provide medical assistance to Grabbingbear after he was shot. Defendants argue that they are entitled to qualified immunity with respect to this claim and that it should be dismissed.

    1. <u>Qualified Immunity</u>

        a. *Prong 1 – Constitutional Violation*

At this stage, in order to overcome Defendants' qualified immunity defense, Plaintiff must plausibly allege that Defendants committed a constitutional violation through their failure to provide Grabbingbear with adequate medical attention.

Plaintiff points to several Tenth Circuit cases that discuss the Eighth Amendment duty on the part of prison officials to, under certain circumstances, provide medical care to prisoners. (ECF No. 34 at 10.) However, "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). In other words, "[b]ecause there had been no formal adjudication of guilt against [Grabbingbear] at the time he required medical care, the Eighth Amendment has no application." *Id*. Grabbingbear's constitutional right to medical care, if indeed he had one, derives instead from the Due Process Clause of the Fourteenth Amendment. *See id.* ("The Due Process Clause . . . does require the responsible government or government agency to provide medical care to persons . . . who have been injured while being apprehended by the police.").

8

The Tenth Circuit has held that the standard for inadequate medical attention under the Due Process Clause is the same as that of the Eighth Amendment: "deliberate indifference to serious medical needs." *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307 (10th Cir. 1985) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "The test for deliberate indifference is both objective and subjective." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "The objective component of the test is met if the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause of the Eighth Amendment." *Id.* (internal quotation marks and citations omitted). "To prevail on the subjective component, the prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Id.* at 1089.

Plaintiff alleges that "[a]fter shooting Grabbingbear, Deputy Europe, who was not seriously injured, stood by and failed to render assistance to Grabbingbear who was bleeding profusely and obviously seriously injured." (ECF No. 1 at 5.) Defendant Engel allegedly arrived on the scene shortly after Grabbingbear had been shot, proceeded to handcuff Grabbingbear, and did not render medical assistance. *Id.* at 6. Paramedics allegedly were not called until eleven minutes after Grabbingbear was shot. *Id.* at 6. As an initial matter, the Court finds the objective component of this test to be met, given that it cannot possibly be contested that death is a sufficiently serious kind of harm for deliberate indifference purposes. *Martinez*, 563 F.3d at 1088.

(1) Subjective Component – Defendant Europe

Taking Plaintiff's allegations as true, it is manifestly plausible that Defendant

Europe understood there was a substantial risk that Grabbingbear would die if not provided immediate medical attention. By failing to request paramedic assistance for eleven minutes, he failed to take reasonable measures to abate that risk.

(2) Subjective Component – Defendant Engel

Whether Plaintiff has adequately alleged the subjective component with respect to Defendant Engel is not, however, nearly as clear. Nevertheless, viewing Plaintiff's allegations in the light most favorable to her, a trier of fact could reasonably conclude that Engel should have recognized the severity of Grabbingbear's injury shortly after arriving at the scene. And while Plaintiff does not allege with specificity how long after Grabbingbear was shot Engel arrived, she alleges that it was "[s]hortly after" Defendant Europe discharged his weapon—that is, at some point before paramedic assistance was requested at 3:48 AM. (ECF No. 1 at 5.) The Court concludes that a plausible inference can be drawn that Engel was at the scene long enough such that failure to request paramedic assistance until 3:48 AM rises to the level of deliberate indifference on the part of Engel to Grabbingbear's serious medical needs. Thus, Plaintiff has adequately alleged that Defendants Europe and Engel, through their failure to promptly request medical assistance for Grabbingbear, committed a constitutional violation.

b. *Prong 2 – Clearly Established Law*

The next issue with respect to these claims is whether it was clearly established that Defendant Europe and Engel's conduct constituted deliberate indifference to the serious medical needs of Grabbingbear. The Court concludes that it was.

Importantly, Plaintiff need not show that an appellate court has already decided this question in the context of this precise factual scenario. The Supreme Court has

held that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (internal quotations and alteration omitted). The Tenth Circuit has observed that "[t]he *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (internal quotations omitted).

The Court notes, preliminarily, that the facts as alleged paint a paradigmatic picture of deliberate indifference to a person's serious medical needs; that is to say, the "general constitutional rule already identified in the decisional law" seems to "apply with obvious clarity to the specific conduct in question," *Hope*, 536 U.S. at 741. Moreover, a review of relevant Tenth Circuit case law establishes that Defendants' alleged conduct has already been found to be unconstitutional.

In *Howard v. Dickerson*, 34 F.3d 978 (10th Cir. 1994), the plaintiff was arrested at her home for being involved in a hit-and-run accident. *Id.* at 979. Wearing a neck brace, the plaintiff told the officer that she had recently undergone surgery. *Id.* at 979. The officer handcuffed her behind her back despite being told that doing so would cause her pain. *Id.* at 979. During the booking procedure at the police station, the officer refused her request for a doctor, although he did eventually change the position of the handcuffs. *Id.* at 979. On these facts, the Tenth Circuit affirmed the district

11

court's rejection of a qualified immunity defense on the defendant's motion to dismiss. *Id.* at 981; *see also Martin v. Board of County Commissioners of County of Pueblo*, 909 F.2d 402 (10th Cir. 1990) (similar); *Garcia*, 768 F.2d at 303 (similar).

Unlike in *Howard*, the conduct alleged in this case that would constitute "deliberate indifference" is the failure to act, as opposed to an affirmative action. Legally, however, this is a distinction without a difference.[3] If disregarding a risk that a detainee may feel discomfort as a result of being handcuffed constitutes deliberate indifference to serious medical needs, it is plain that failing to promptly seek paramedic assistance for a person with an obviously life-threatening gunshot wound does as well. Defendants were on fair notice that failing to promptly request paramedic assistance under these circumstances is unlawful. The Court concludes that the constitutional rule of decision from *Garcia* and *Howard* applies with "obvious clarity" to the facts alleged in this case, and as such, Defendants' Motion with respect to Claims 2 & 3 is denied.

## C. Claims 4 & 5 – § 1983; Failure to Train / Supervise Against Defendant McIntosh in His Individual and Official Capacities

Plaintiff seeks to hold the Sheriff of Adams County liable under § 1983, on the theory that his failure to adequately train his deputies amounted to deliberate indifference to the constitutional rights of Grabbingbear. (ECF No. 1 at 8–9.) To the extent Plaintiff brings a claim against the Sheriff in his official capacity, "it is the same as bringing a suit against the county." *Martinez*, 563 F.3d at 1091.

---

[3] Both an act, as well as a failure to act, can constitute deliberate indifference. *See Martin*, 909 F.2d at 406.

### 1. Claim 4 – Municipal Liability

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks and citations omitted). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Id.* at 61. In this context, "[a] municipality can be liable where the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 773 (10th Cir. 2013) (internal quotation marks and citation omitted).

Consequently, the question here is whether Plaintiff has adequately alleged that the County's failure to train its sheriff's deputies was egregious enough to amount to deliberate indifference to the rights of persons in Grabbingbear's position. Plaintiff's Complaint includes allegations that "Deputy Europe had previously killed a citizen of Adams County in the course of his work as a Deputy Sheriff on February 26, 2012," and that "[p]rior to being hired as an Adams County Deputy Sheriff, Deputy Europe was charged and received a deferred judgment to unlawfully discharging a weapon." (ECF No. 1 at 4.) Plaintiff also alleges that "Defendant McIntosh was aware of prior incidents in which Deputy Europe had acted unreasonably and violated rights of members [of] the public to be free from Constitutional violations." *Id.* at 9. She also abstractly states that Defendants Europe and Engel did not receive proper training or supervision with

13

respect to use-of-force rules or when to request or administer medical assistance. *Id.* at 6.

"[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390–91. Thus, even assuming that the prior instance in which Plaintiff alleges Defendant Europe killed a citizen of Adams County involved an unlawful use of deadly force, that alone would not be sufficient to establish that "the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Schneider*, 717 F.3d at 773.

The Court is unable, however, to state with any degree of certainty that Plaintiff would be unable in an amended complaint to assert facts which plausibly allege a viable claim of municipal liability. For this reason, Defendants' Motion as to Claim 4 is granted, but Claim 4 will be dismissed without prejudice.

2. Claim 5 – Defendant McIntosh's Personal Liability

Plaintiff also seeks to bring a claim against the Sheriff in his individual capacity. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). "[I]n situations where an affirmative link exists between the constitutional deprivation and

either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise, the supervisor may be personally liable." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (internal quotation marks and citation omitted).

Plaintiff does not allege that Defendant McIntosh personally participated in the incident in question, nor does she allege that he directed Defendant Europe or Engel to act as they did. (ECF No. 1.) As such, this claim depends on whether Plaintiff sufficiently alleged that an affirmative link exists between Defendants Europe or Engel's constitutional violations and Defendant McIntosh's failure to supervise them. Moreover, because Defendant McIntosh has raised a qualified immunity defense, Plaintiff's allegations must give rise to a plausible inference that McIntosh's involvement in the incident constituted a violation of clearly established law.

The Court again assumes it is true that Defendant Europe, before becoming a sheriff's deputy, received a deferred judgment on a charge of unlawfully discharging a weapon, that he had previously killed a citizen of Adams County in his capacity as a sheriff's deputy, and that Defendant McIntosh was aware of the latter. Nevertheless, Plaintiff's claim boils down to the assertion that, given McIntosh's knowledge of these prior incidents, his failure to personally supervise Europe at the time of the incident was not only a constitutional violation, but also that its unlawfulness was clearly established. The Court is not persuaded. Whether or not McIntosh's involvement amounts to a constitutional violation, it does not constitute a violation of clearly established law.

In *Butler v. City of Norman*, 992 F.2d 1053 (10th Cir. 1993), the Tenth Circuit reversed the district court's denial of qualified immunity to the city's chief of police. The plaintiff in *Butler* alleged that three city police officers used excessive force in arresting

15

him, and sought to impose individual liability on the chief as the arresting officers' supervisor. The plaintiff did not allege that the chief was present at the time of the arrest. The Court noted that this claim rested on "no evidence other than the incident with [the plaintiff himself] and a claim that no action was taken against the officers after the incident[,]" and concluded that this was insufficient to show an "affirmative link" between the Chief's conduct and the constitutional violation of his subordinates. *Id.* at 1055.

Similarly, in this case, the only potential affirmative link between the actions of, on the one hand, Defendants Europe and Engel, and Defendant McIntosh on the other, is McIntosh's alleged awareness of Europe's having previously killed a citizen of Adams County in his capacity as a sheriff's deputy. While the instant case can be distinguished from *Butler* on the basis that McIntosh knew of an incident involving Europe prior to the events currently at issue, Defendant McIntosh's actions as alleged did not constitute a violation of clearly established law.

The Court is unable, however, to state with any degree of certainty that Plaintiff would be unable in an amended complaint to assert facts which plausibly allege a viable § 1983 claim against Defendant McIntosh in his individual capacity. For this reason, Defendants' Motion as to Claim 5 is granted, but Claim 5 will also be dismissed without prejudice.

D.   **Claims 6–11 – State Law Tort Claims**

Plaintiff seeks to hold Defendant Europe liable for assault, Defendants Europe and Engel liable for negligent failure to provide medical assistance, and all Defendants liable for Grabbingbear's wrongful death. (ECF No. 1 at 10–11.) Plaintiff's state law claims are subject to the Colorado Governmental Immunity Act ("CGIA"), which

immunizes public employees from tort liability "unless the act or omission causing [the] injury was willful and wanton." Colo. Rev. Stat. § 24-10-118(2)(a). Arguing that Plaintiff did not adequately allege that Defendants' actions were willful and wanton, they posit that this Court therefore lacks jurisdiction over the claims.

As Defendants point out, the Colorado Supreme Court has stated that "[a] C.R.C.P. 12(b)(1) motion to dismiss on grounds of immunity under the CGIA raises a jurisdictional issue." *Padilla ex rel. Padilla v. School Dist. No. 1 in City & Cnty. of Denver*, 25 P.3d 1176, 1180 (Colo. 2001). To the extent that Plaintiff has failed to allege the willful and wanton nature of Defendants' conduct, it is unclear whether this Court therefore lacks subject-matter jurisdiction. *See* 28 U.S.C. § 1367; *cf. Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 840 (10th Cir. 2003) (suggesting that failure to comply with a different provision of the CGIA creates a jurisdictional problem for a federal court). In any event, because Defendants use a Rule 12(b)(1) motion to make a facial attack on the sufficiency of Plaintiff's allegations, there would be no practical difference between dismissal for failure to state a claim and dismissal for lack of subject-matter jurisdiction. As such, the Court will treat Defendants' Motion in this respect as one brought under Rule 12(b)(6).

"Willful and wanton" is not defined in the CGIA. "The majority of courts to address the issue, however, have applied the definition set forth in Colorado's exemplary damages statute, Colo. Rev. Stat. § 13-21-102[:] Willful and wanton conduct is 'conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and

17

safety of others, particularly the plaintiff.'" *Zerr v. Johnson*, 894 F. Supp. 372, 376 (D. Colo. 1995) (citing, *inter alia*, *Moody v. Ungerer*, 885 P.2d 200, 204 (Colo. 1994)). The "willful and wanton" standard, in other words, requires that the actor "act[] not only unlawfully, but with the intent to injure, or in conscious disregard of the probability that his acts would result in injury to the plaintiff." *Navratil v. Parker*, 726 F. Supp. 800, 805 (D. Colo. 1989).

      1.      <u>Claim 6 – Assault Claim Against Defendant Europe</u>

The Court concludes that Plaintiff has adequately alleged the willful and wanton nature of Defendant Europe's conduct. As explained above, *supra* at 5–6, Plaintiff's allegations are sufficient to establish that Europe violated Grabbingbear's Fourth Amendment right against unreasonable seizures. Especially given the allegation that Europe shot Grabbingbear "[a]fter rendering him incapable of further resistance" (ECF No. 1 at 5), a plausible inference can be made that Europe acted "heedlessly and recklessly, without regard to consequences, or of the rights and safety" of Grabbingbear. Defendants' Motion as to Claim 6 is denied.

      2.      <u>Claims 7 & 8 – Inadequate Medical Assistance Claims Against Defendants Europe and Engel</u>

The Court concludes Plaintiff has adequately alleged that Defendant Europe and Engel's failure to promptly request paramedic assistance constitutes willful and wanton conduct. *Cf. Gray v. Univ. of Colo. Hosp. Auth.*, 284 P.3d 191, 199 (Colo. App. 2012). As explained above, *supra* at 7–12, Plaintiff has plausibly alleged that this failure amounts to a constitutional violation. This is so precisely because their conduct as alleged reflects a "conscious disregard of the probability that [their] acts would result in

18

injury to the plaintiff." Defendants' Motion as to Claims 7 (Inadequate Medical Assistance Against Defendant Europe) and 8 (Inadequate Medical Assistance Against Defendant Engel) is denied.

> 3. Claims 9–11 – Wrongful Death Claims Against Defendants Europe, Engel, and McIntosh

For the same reasons as above, *supra* at 17–18, the Court concludes Plaintiff has adequately alleged that Defendants Europe and Engel's conduct, as it relates to the death of Grabbingbear, was willful and wanton. As such, Defendants' Motion as to Claim 9 (Wrongful Death Against Defendant Europe) and Claim 10 (Wrongful Death Against Defendant Engel) is denied. However, for essentially the same reason that Plaintiff has not stated a § 1983 claim against Defendant McIntosh in his individual capacity, *supra* at 14–16, Plaintiff has not adequately alleged that the actions of McIntosh were willful and wanton.

The Court is unable, however, to state with any degree of certainty that Plaintiff would be unable in an amended complaint to assert facts which plausibly allege a viable wrongful death claim against Defendant McIntosh. For this reason, Defendants' Motion as to Claim 11 is granted, but Claim 11 will be dismissed without prejudice.

## IV. CONCLUSION

In accordance with the foregoing, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss for Failure to State a Claim and for Lack of Subject-Matter Jurisdiction (ECF No. 17) is GRANTED IN PART and DENIED IN PART;

2. Defendants' Motion is GRANTED as to Plaintiff's Claims 4, 5, and 11, and these claims are DISMISSED WITHOUT PREJUDICE;

3. Defendants' Motion is DENIED in all other respects;

4. The Stay of Discovery (ECF No. 27) is LIFTED; and

5. The Magistrate Judge shall set this matter for a Scheduling Conference as soon as practicable, as this action remains pending as to Plaintiff's Claims 1–3 and 6–10.

Dated this 21st day of November, 2019.

BY THE COURT:

William J. Martinez
United States District Judge