IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-3113-WJM-STV

ESTATE OF KYLER GRABBINGBEAR by Andrea Feltman, as Personal Representative, and
ANDREA FELTMAN, individually as Parent and Personal Representative,

    Plaintiffs,

v.

WILFRED EUROPE, individually,

    Defendant.

## ORDER ON MOTIONS *IN LIMINE*

Before the Court are: (1) Defendant Wilfred Europe's Motion *in Limine* ("Defendant's MIL") (ECF No. 114) and Plaintiffs' response (ECF No. 133); and (2) Plaintiffs Estate of Kyler Grabbingbear and Andrea Feltman's (jointly, "Plaintiffs") Combined Motions *in Limine* ("Plaintiffs' MIL") (ECF No. 115) and Defendant's response (ECF No. 134).

For the following reasons, Defendant's MIL is granted and Plaintiffs' MIL is granted in part and denied as moot in part.

### I. LEGAL STANDARD

"The admission or exclusion of evidence lies within the sound discretion of the trial court . . . ." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges have discretion to decide whether an adequate foundation has been laid for the

admission of evidence.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is generally admissible and should only be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

> Federal Rule of Evidence 404(b) provides:
>
> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

A court considers a four-factor test when determining the admissibility of evidence under Rule 404(b). The test requires that:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to FED.R.EVID. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000) (quotation omitted); *see Huddleston v. United States*, 485 U.S. 681, 691–92 (1988) (discussing four sources that serve as "the protection against . . . unfair prejudice" when admitting evidence under

Rule 404(b)).

## II. DEFENDANT'S MIL

A.    **Image Posted to Europe's Facebook Page**

Defendant requests that the Court exclude evidence of an image he posted to his Facebook page depicting a blurry sign that reads: "No trespassing violators will be shot survivors will be shot again." (ECF No. 114 at 3.) Both parties agree that the image dates back years before the incident at issue in this case. (ECF No. 89 at 39; ECF No. 114 at 3.) Defendant argues that: (1) the image is irrelevant; (2) its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury; and (3) it is improper character evidence. (ECF No. 114 at 3.) Based on Plaintiffs' summary judgment briefing, Defendant anticipates that Plaintiffs intend to use this image to show that Defendant has an "overly aggressive personality." (ECF No. 89 at 39.)

In response, Plaintiffs argue that "the Tenth Circuit has repeatedly allowed evidence of past acts to be used for a proper purpose," and Defendant's testimony at trial might open the door. (ECF No. 133 at 3.) Plaintiffs cite no case law in support of this general assertion that the Tenth Circuit has allowed such evidence to be admitted at trial. Plaintiffs request that the Court reserve ruling on the website photograph until Defendant testifies at trial. (*Id.* at 3–4.)

Upon due consideration, the Court agrees with Defendant. The image bears no relevance to the incident in this case, and regardless, its probative value is substantially outweighed by the danger of unfair prejudice and confusing the issues. *See* Fed. R. Evid. 401, 403. Additionally, having considered all of the *Huddleston* factors, to the extent the image would be offered for the purpose of showing Defendant's "overly

3

aggressive personality," it is impermissible character evidence under Rule 404(b). Therefore, the Court grants this portion of Defendant's MIL, subject to the image being introduced at trial if Defendant opens the door when he testifies.

**B.     Other Use of Force Incidents and Internal Departmental Investigations**

Defendant requests that the Court exclude evidence of other use of force incidents and internal departmental investigations that are unrelated to the facts of this case. (ECF No. 114 at 5.) In connection with this argument, Defendant provides a table summarizing the evidence at issue. (*Id.* at 5–7.)

Defendant argues that the incidents listed in the table are irrelevant under Rule 401 because they are of no consequence to determining whether he violated any law in the incident with Grabbingbear. (*Id.* at 7.) And, even if there was some relevance, it is "far outweighed by . . . FRE 403," as Defendant would be unfairly prejudiced if "allegations from other unrelated incidents provoke emotional reactions or cause the jury to judge [him] not based on the facts surrounding this incident, but instead based on events that are unrelated to this incident." (*Id.*) Moreover, Defendant points out that should these other incidents come into evidence, the trial will be "sidetracked by the need to present evidence about whether there is any substantiation for the allegations," which would waste time, create undue delay, and confuse the issues. (*Id.*)

Even if the other incidents evidence passes muster under Rules 401 and 403, Defendant argues that it is nevertheless inadmissible propensity evidence under Rule 404 and is not admissible for another purpose, such as proving motive, opportunity, intent, or other uses. (*Id.*)

In their response, Plaintiffs only substantively address one incident listed in Defendant's table: B ("Incident B"), which occurred on July 26, 2012 and involved an

4

incident in which "Deputy Europe shot an individual in a vehicle after the individual reached for what Deputy Europe's partner had identified as a gun." (ECF No. 114 at 6; ECF No. 133 at 2.) Plaintiffs further explain in their response that on July 26, 2012, Defendant killed Don Cambron, an unarmed citizen, in the course of a traffic stop. (ECF No. 133 at 2.) They state that three other deputy sheriffs were present at the stop, though none fired their weapons. (*Id.*) Further, Plaintiffs state that a Critical Incident Team investigated the July 26, 2012 incident, but that report has been destroyed. (*Id.*)

Plaintiffs explain that in this case, Defendant was not interviewed by the Critical Incident Team until five days after he killed Grabbingbear. (ECF No. 133 at 2.) Plaintiffs argue that "Defendant's prior experience as the subject of an investigation by a Critical Incident Team enabled him to contract a false narrative of the events of December 7, 2017." (*Id.*) In other words, Plaintiffs argue that Defendant's prior experience as the subject of an investigation in which he killed an unarmed man gave him a "dry run" which enabled him to create an initially plausible, although false, narrative which he related to the Critical Incident Team. (*Id.*) Therefore, Plaintiffs contend that Defendant's past history as the subject of an investigation killing an unarmed man is relevant to show both motive and plan. (*Id.* at 3.)

As an initial matter, the Court grants Defendant's MIL as to those incidents in the table in italics, as Defendant states that Plaintiffs do not object to exclusion of these incidents. (ECF No. 114 at 5.) Those incidents, referred to by their Departmental File Number in the table, include: IA2012-031; IF2015-007; CC2018-050; and CC2019-0011.

Regarding Incident B, while the determination of whether to allow evidence of the

July 2012 incident is, in the Court's view, a close call, the Court ultimately agrees with Defendant.  To be relevant, the Rule 404(b) evidence must make a material fact more or less likely as a matter of logical reasoning that does not rely on Defendant's purported "bad character."  *See Old Chief v. United States*, 519 U.S. 172, 178–79 (1997); *United States v. Henthorn*, 864 F.3d 1241, 1249, 1251 (10th Cir. 2017).  Its "relevance cannot 'depend on a defendant likely acting in conformity with an alleged character trait' or require the jury to draw a 'chain of inference dependent upon a conclusion' about the defendant's character."  *Henthorn*, 864 F.3d at 1251–52 (citing *United States v. Commanche*, 577 F.3d 1261, 1267, 1269 (10th Cir. 2009)).

The Court is deeply troubled by the fact that in Incident B an unarmed civilian was shot and killed by Defendant in the course of a traffic stop, while other law enforcement officers also present at the scene apparently saw no need to discharge their weapons.  Nonetheless, the Court is constrained by Tenth Circuit authority on this point and reluctantly concludes that the proposed evidence concerning Incident B would impermissibly require the jury to make prohibited inferences about Defendant's character, as well as to conclude that he has a propensity to lie in connection with interviews by the Critical Incident Team.  Even if the Court were to give the jury a detailed and strongly worded limiting instruction, the fact remains that evidence of Incident B disproportionately risks unfairly prejudicing Defendant, wasting time, and confusing the jury from the evidence relevant to the claims in this case.  Therefore, having considered all of the *Huddleston* factors, the Court grants this portion of Defendant's MIL.

With respect to the other incidents from Defendant's work history, all Plaintiffs

state is that "[i]t is possible, even likely, that [Defendant's] testimony at trial could 'open the door' to the incidents . . . ." (ECF No. 133 at 3.)  By not *substantively* addressing Defendant's arguments concerning the incidents listed in the table, other than Incident B, Plaintiffs have given the Court no understanding of the purpose for which Plaintiffs would offer such evidence, its relevance, or how its probative value might compare with its prejudicial value.  Therefore, Defendant's MIL is granted as to all other incidents listed in the table, subject to Defendant opening the door when he testifies at trial.

### III. PLAINTIFFS' MIL

**A.      Grabbingbear's Expulsions from School**

Plaintiffs acknowledge that Grabbingbear was expelled from several schools. (ECF No. 115 at 2–3 (listing expulsions).)  Nonetheless, they argue that such evidence is not relevant to establishing liability in this case because they had "no effect on [Defendant's] decisions which led to the death of Kyler Grabbingbear." (*Id.* at 3.)

In response, Defendant argues that Plaintiffs have placed this evidence squarely at issue because their damages expert relies on assumptions about the level of education Grabbingbear would have gone on to achieve and opines that Grabbingbear would have completed high school, a vocational program, and likely a four-year college program.  (*Id.* at 1–2.)  Defendant emphasizes that Plaintiffs focus their argument on whether the evidence of expulsions is relevant to liability but ignore its relevance concerning damages.  (*Id.* at 2.)  The fact that Grabbingbear could not stay in school for long without being expelled would "directly impact his ability to stay the course of any of the educational and career paths Plaintiffs' expert opines about," making this evidence "highly relevant, particularly on the question of whether Grabbingbear was likely to obtain a high school degree, or any secondary degrees." (*Id.*)

7

Upon due consideration, the Court agrees with Plaintiffs that this evidence is of questionable relevance, though the Court also sees the potential relevance to Defendants with respect to damages, depending on the testimony of Plaintiffs' damages expert. Therefore, the Court grants this portion of Plaintiffs' MIL, subject to Plaintiffs' damages expert opening the door with respect to issues of Grabbingbear's future academic endeavors and their impact on his earning potential.

**B.     Grabbingbear's Contacts with Law Enforcement Officers**

Plaintiffs acknowledge that Grabbingbear "had numerous contacts with law enforcement officers," which included suspicion of menacing, a marijuana pipe in a car, various traffic offenses, assault, trespassing, possession of marijuana, and suspected theft. (ECF No. 115 at 4–5.) Nonetheless, Plaintiffs request that the Court exclude such evidence as irrelevant. (*Id.* at 5.)

In response, Defendant argues that Grabbingbear's "significant legal transgressions" would directly impact his ability to stay the course of any of the educational and career paths Plaintiffs' expert opines about, making this evidence highly relevant, "particularly on the question of whether Grabbingbear was likely to obtain a high school degree, or any secondary degrees." (ECF No. 134 at 2.)

The Court sees a distinction between the evidence of Grabbingbear's expulsions and their relevance to damages calculations based on his future educational pursuits, and the evidence of his contacts with law enforcement officers. Not only does evidence of his contact with law enforcement bear less of a relationship to his future educational prospects, but it is also potentially much more highly prejudicial. Therefore, the Court finds that the potential prejudicial value of this evidence substantially outweighs its probative value and grants this portion of Plaintiffs' MIL under Rule 403.

**C.     Grabbingbear's Struggle with Feltman's Boyfriend**

At her deposition, Feltman testified that Grabbingbear and her much older boyfriend engaged in a struggle in June 2017.  (ECF No. 115 at 3.)  She also testified that Grabbingbear grasped her boyfriend by the neck in self-defense.  (*Id.*)

Plaintiffs argue that Defendant will attempt to use such evidence to establish that Grabbingbear had a violent character and acted in accordance with that character on December 7, 2017, the day he was killed.  (*Id.*)  Therefore, Plaintiffs request that the Court exclude evidence regarding the struggle with Feltman's boyfriend.  (*Id.* at 4.)

In response, Defendant argues that the evidence of the struggle is relevant because "it rebuts Plaintiffs' theory of the case that Grabbingbear was totally inexperienced in any fighting techniques, while Europe had extensive experience." (ECF No. 134 at 4.)  Defendants anticipate that Plaintiffs "will try to paint Grabbingbear as the proverbial 'babe in the woods,' and the evidence of him previously fighting an older man and using a chokehold technique would rebut what Plaintiffs have put at issue."  (*Id.*)

While the Court understands Defendant's anticipation of Plaintiffs' theory and presentation of their case at trial, the Court concludes that such evidence has significant potential to violate Rule 404(b), for much the same reasons as the Court explained were its bases for granting Defendant's MIL as it pertained to Incident B.  Therefore, the Court grants this portion of Plaintiffs' MIL, subject to Plaintiffs opening the door at trial by presenting evidence to the effect of "Grabbingbear was never in a fight, or did not know how to fight," or similar theories.

**D.     Feltman's Addiction and Legal Problems**

Plaintiffs state that it is uncontested that Feltman suffered from an addiction to

9

methamphetamine and due in part to her addiction, she was arrested for and convicted of domestic violence. (ECF No. 115 at 6.) She also had difficulties complying with the terms of her probation. (*Id.*)

Defendant has agreed to refrain from introducing evidence of Feltman's addiction and legal problems unless Plaintiffs open the door. (ECF No. 115 at 1; ECF No. 134 at 5.) At trial the Court will hold Defendant to its agreement, and as a consequence it denies this portion of Plaintiffs' MIL as moot.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. Defendant's MIL (ECF No. 114) is GRANTED, to the extent stated herein; and

2. Plaintiffs' MIL (ECF No. 115) is GRANTED in part and DENIED as moot in part, to the extent stated herein.

Dated this 16th day of November, 2022.

BY THE COURT:

William J. Martinez
United States District Judge